**JOHNSON v. WALLACE et al.**

No. 9530.

Court of Civil Appeals of Texas.
Austin.

Dec. 5, 1945.

R. B. Thrasher, of Austin, for appellant.

No appearance for appellees.

BLAIR, Justice.

Appellees, Mrs. Inez Wallace and Joe Clark, sued appellant, Minnie Holman Johnson, a widow, in trespass to try title to recover lots 6 and 7 in Block 1 of Forrester's Subdivision of Outlot 58 in Division B of Austin, Texas. At the conclusion of the evidence the case was withdrawn from the jury and judgment was rendered for appellees for title and possession of the property; hence this appeal.

Under her plea of not guilty appellant sought to establish an equitable title to the property under a parol agreement with appellee Mrs. Wallace to give appellant "a contract" when she had paid, at $15 monthly, one-third of $900. Appellant contends that her evidence raised a jury issue as to such claim of equitable title to the property. The contention is not sustained.

Bean Holman purchased the property and with his wife, Catherine, took possession of the property in 1894, at which time their daughter, appellant, Minnie Holman Johnson, was three years of age. In 1908 a mechanic's lien for improvements on the property was executed by Holman to L. M. Ainsworth, who assigned it to J. Lee Costley, and he assigned it to Mrs. Eula Lee Carson, which debt and lien were extended from time to time. Bean and Catherine Holman died intestate and no administration was had on either of their estates. In 1936 Mrs. Carson brought suit in the district court to recover her debt and to foreclose the lien against the property, naming appellant, Minnie Holman Johnson, a widow, Bertha Brown, a widow, and Catherine Combs Morton, and her husband, Mack Morton, as parties defendant, the three named women being the only children and

heirs at law of Bean and Catherine Holman, and also made the Unknown Heirs of Bean Holman parties defendant. An attorney represented the unknown heirs and the three named daughters, who were adjudged to be the only children and heirs at law of Bean and Catherine Holman, and the judgment foreclosed the lien against them. G. W. Norman purchased the property under the sheriff's sale and deed of June 14, 1937. Norman died and O. R. Lott qualified as independent executor of his estate, and he and Norman's widow, M. E. Norman, sued appellant in trespass to try title, and recovered title and possession of the property, appellant being represented by an attorney. The judgment was rendered on May 10, 1943. On July 23, 1943, O. R. Lott, said independent executor, and the widow, M. E. Norman, conveyed the property by deed to appellee Mrs. Inez Wallace for a recited consideration of $610.51, and on the same day she executed a deed of trust to secure a loan of $900 from Paul R. Konz, which was used to pay Norman and Lott $610.51; recording fees $3.50; attorney for Konz $50; state and county taxes $48.58; city taxes $176.97; and the balance of $10.44 was paid to Mrs. Wallace. On the same day, July 23, 1943, appellant, Minnie Holman Johnson, executed and delivered to Mrs. Inez Wallace a quitclaim deed to the property, for a recited consideration of $1 paid, and from that date appellant paid Mrs. Wallace $15 each month until January 23, 1945, each receipt produced by appellant reciting that the $15 was for rent of the property for the month stated, which amount of $15 had been fixed by OPA as the rental for the property as between appellant and appellee, Mrs. Wallace. Shortly after the date last mentioned Mrs. Wallace brought a forcible detainer suit in the justice court against appellant, and obtained a judgment for possession of the property, from which appellant appealed to the county court, where the case is still pending. Appellant having made claim to title to the property in the forcible detainer suit, appellee Mrs. Wallace and Joe Clark (to whom Mrs. Wallace agreed on June 24, 1944, to sell the property for $500 cash and $2,000 to be later paid, and when paid she would deed him the property, he to pay the taxes and insurance) brought this suit in trespass to try title against appellant, and recovered title and possession of the property as herein stated.

Under the foregoing facts and circumstances appellant has remained continuously in possession of the property since 1894. She has made no attack on the two aforementioned judgments decreeing that she had no interest in or title to the property. Nor has she in any manner attacked her quitclaim deed to Mrs. Wallace. She is therefore relegated to her claim of equitable title arising after her quitclaim deed, under a parol agreement with Mrs. Wallace to give her "a contract" when she had paid at $15 monthly one-third of $900; her testimony being as follows:

"Q. What agreement or understanding did you have with Mrs. Wallace about the place? A. I said, 'What about the contract.' She told me, she says, 'When you pay a third, I will give you a contract—a third.'

"Q. A third of what? A. A third of this amount. $15 a month she charged me. The old house was not worth it. She said she would send somebody but she did not send somebody, she came out herself.

"Q. She said when you paid a third of it she would give you a contract? A. Yes, sir.

"Q. Did she tell you how much you would have to pay to pay it out? A. $900 and when I paid a third of it, I will give you a contract.

"Q. Did you ever give your consent that Mrs. Wallace sell the property to Joe Clark? A. No, sir."

■ It may be seriously doubted if the contract sought to be established by appellant could be enforced, because of want of definiteness. At most her contract was one for "a contract" for the sale of the real estate, the terms of which were not shown. Such a parol contract is also clearly in violation of the provisions of Art. 3995, which read:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

   *    *    *    *    *    *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; or

"5. Upon any agreement which is not to be performed within the space of one year from the making thereof."

This Article prohibits the bringing of any action upon a contract for the sale of real estate unless in writing and signed by the party to be charged therewith, or his authorized agent. Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505. And the words, "any contract for the sale of real estate," have been construed to include every agreement which contemplates the alienation of an existing interest in land. Chandler v. City State Bank of Wellington, Tex.Civ.App., 135 S. W.2d 1013.

 Furthermore, the contract of appellant could not, under its own terms, be "performed within the space of one year from the making thereof," and is condemned by Sec. 5 of Art. 3995. The payment of $300 at $15 per month, one-third of $900, could not be performed within one year from the date of the contract. Wright v. Donaubauer, 137 Tex. 473, 154 S.W.2d 637; Jackman v. Anheuser-Busch, Inc., Tex.Civ.App., 162 S.W.2d 744, error ref.

The contract sought to be established by appellant is also in violation of Art. 1288, which reads:

"No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

This statute has from the earliest time been construed as requiring:

" * * * that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. Nor is possession of the premises by the vendee. Each of these three elements is indispensable, and they must all exist."

"Payment of the purchase money, the erection of valuable improvements and possession must all concur to pass title by a parol sale." 20 Tex.Jur., 329; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and cases cited in 20 Tex. Jur. 329, Notes 18 and 19.

 Appellant made no improvements on the land with the consent of the vendors, and there are present no facts which would make the transaction a fraud upon her, if the contract claimed by her were not enforced.

The judgment of the trial court is affirmed.

Affirmed.